# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

MARK A. D.,                          )
                                     )
     PLAINTIFF,        )
                                     )
vs.                                  )          CASE NO. 18-CV-70-FHM
                                     )
                                     )
NANCY A. BERRYHILL, Acting           )
Commissioner of the Social Security  )
Administration,                      )
                                     )
     DEFENDANT.        )

## OPINION AND ORDER

Plaintiff, MARK A. D., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] This case was on remand from the Appeals Council. The second hearing before an Administrative Law Judge (ALJ) James Stewart was held January 4, 2017. By decision dated March 1, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on December 5, 2017. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 42 years old on the alleged date of onset of disability and 46 years old on the date of the denial decision. He has an 11th grade education and attended special education classes. His past work experience includes a hog sawer. [R. 30, 126]. Plaintiff claims to have been unable to work since June 10, 2013[2] due to mental issues, uncontrollable bowel movements, asthma, learning disability, paranoid schizophrenia, and chronic bronchitis. [R. 335].

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: congenital bowel disorder status-post surgery, asthma, chronic bronchitis, seizure disorder, kidney function disorder, learning disability, borderline intellectual functioning, paranoid

---

[2] Plaintiff amended his onset date from January 1, 1996 to June 10, 2013. [R. 44].

schizophrenia, bipolar disorder, and substance abuse. The ALJ found moderate obesity and Hepatitis C non-severe. [R. 18]. The ALJ determined that Plaintiff has the residual functional capacity to perform light work except he cannot climb ladders, ropes, or scaffolds, be exposed to unprotected heights, open flames, dangerous machinery, or other hazardous conditions. Plaintiff cannot be exposed to elevated levels of gases, fumes, dusts, odors, poor ventilation, or other respiratory irritants, or be exposed to elevated levels of heat (defined as a level in excess of that ordinarily found in office buildings or light manufacturing facilities). Restroom facilities must be readily available with adequate space for the number of employees at the workplace. Due to mental impairments, Plaintiff would be limited to unskilled work consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember, and carry out simple instructions given orally or by demonstration. Plaintiff can relate to supervisors and coworkers on a superficial work related basis and could adapt to a work situation, but cannot have contact with the general public (defined as interaction with the general public not being part of the job duties, and any contact would in most cases be incidental and superficial). [R. 24]. The ALJ determined that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 31]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

**Plaintiff's Allegations**

Plaintiff asserts the ALJ failed to properly consider his uncontroverted objective medical evidence. [Dkt. 16, p. 4].

**Analysis**

Plaintiff argues that the ALJ's finding that the record did not support his allegation that he had frequent, uncontrolled bowel movements is in error. Plaintiff contends that the ALJ ignored the verified objective medical evidence from a rectal exam performed on June 2, 2015. [Dkt. 16, p. 5; R. 757-61]. In support of his argument, Plaintiff points to the follow-up examination for cellulitis of his right axilla[3]. Plaintiff was examined by Gabriel Presley, M.D., at St. John Clinic who noted, "Plaintiff would also like a letter regarding his disability. Please see the Letter (sic) note created on this date for more info." [R. 758]. Dr. Presley further stated:

> "This is Gabriel Presley, MD writing a letter for Mr. Mark Down. Mark Down reports to me a (sic) having been born without a rectum. Patient reported to me having a surgery as a baby that utilized part of his GI track as a replacement for his rectum. I did a 'rectal' exam on the patient and noted that the patient did not have any rectal tone but instead had an opening approximately 1 cm In (sic) diameter with fecal matter around the anus. In my opinion these physical findings were consistent were (sic) Mr. Down's given history."

[R. 759]. Plaintiff also claims he consistently complained about uncontrollable bowel movements. Plaintiff informed the Department of Corrections he needed to be close to a restroom, [R. 485], advised Family and Children's Services' clinicians that he had difficulty controlling his bowels, [R. 780-81, 831], and informed Good Samaritan Health Services that

---

[3] The space below the shoulder through which vessels and nerves enter and leave the upper arm; armpit.

he could not work due to the inability to hold his stool when he needed to go to the bathroom.  [R. 939].

Addressing the Plaintiff's bowel disorder, the ALJ stated:

". . . The undersigned rated the impairment severe because evidence showed it had more than a minimal impact on the claimant's ability to function, but there was no support in the record for the claimant's allegation that he had frequent, uncontrolled bowel movements.  Furthermore, the record did not contain a medical assessment finding that the claimant had frequent, uncontrolled bowel movements to the degree, frequency, or severity alleged by the claimant.  During the hearing, there was no explanation as to why such an allegedly pervasive problem would not be documented or attempted to be treated.  While the claimant pointed to Exhibit 26F, which contained a physical exam documenting that the claimant had a surgically repaired rectum, but the statement and accompanying medical treatment history did not reference frequent, uncontrolled bowel movements or that the condition described in the report would necessarily result in frequent, uncontrolled bowel movements.  Notably, the most recent emergency room records do not reference or assess frequent uncontrolled bowel movements and gastrointestinal results were reported normal (35F)."

[R. 27-28].

The ALJ also noted that, "[T]here is no reference to frequent and/or uncontrolled bowel movements under the problem list/past medial (sic) history section of Exhibit 37F/, and this lack of reference casts further doubt on the validity of the claimant's contentions of disabling bowel movement frequency."  [R. 28, 992].  Plaintiff's activities of daily living which included no difficulty with personal care, ability to prepare sandwiches and light meals daily, capable of doing laundry and dishes were also not consistent with Plaintiff's allegations of debilitating impairments.  Further, Plaintiff was able to walk, use public transportation, leave home independently, shop for food and household items, watch television, play card games, and throw darts.  [R. 27].

Viewing the evidence in the light most favorable to Plaintiff, the ALJ accommodated Plaintiff's bowel disorder in the RFC assessment by requiring restroom facilities to be readily available. The ALJ also reduced Plaintiff's exertion from medium to light work to avoid abdominal strain. [R. 24, 28]. The decision clearly shows the ALJ considered Plaintiff's bowel disorder and demonstrates that he adequately considered the evidence. Therefore, the ALJ's conclusion that Plaintiff was not disabled was based on substantial evidence and arrived at by application of correct legal standards.

Plaintiff also argues the inclusion that restroom facilities must be readily available with adequate space for the number of employees at the work place in the RFC assessment would prevent competitive employment. [Dkt. 16, p. 6-7]. Plaintiff points to the testimony of the vocational expert in response to a hypothetical questioned posed by the ALJ during the hearing on January 4, 2017, that the need to take one or two unscheduled restroom breaks per work day in addition to normal breaks would prevent competitive employment. [R. 72-73]. Further, in response to a hypothetical question during the hearing held November 10, 2014, the vocational expert testified that the need to be in close proximity to restrooms would prevent competitive work. [R. 124-26].

Although the vocational expert did testify that the need to take one or two unscheduled restroom breaks per work day and the need to be in close proximity to restrooms would prevent competitive work, those limitations were not included in the ALJ's RFC assessment. In response to the ALJ's hypothetical question that included "restroom facilities must be readily available with adequate space for the number of employees at the work place," the vocational expert testified that there were a number of jobs in the national

economy that were available.[4] [R. 70-73]. Moreover, the ALJ found the objective evidence did not support Plaintiff's claims of disabling bowel movement frequency, but tempered the RFC assessment to the benefit of Plaintiff. [R. 28]. Basically, Plaintiff is dissatisfied with the weight given the evidence by the ALJ and is essentially asking the court to reweigh the evidence. This it cannot do. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted). Because the hypothetical question posed by the ALJ to the vocational expert was appropriately based on the RFC assessment, the court finds that ALJ's reliance on the vocational expert's testimony was proper.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 20th day of March, 2019.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

---

[4] Small product assembler (DOT #706.684-022; electrical accessories assembler (DOT #729.687-010; and bottling line attendant (DOT #920.687-042). [R. 31, 72].

7